W. W. WALLEY & SON *v.* L. N. DANTZLER CO.

[75 South. 433, Division B.]

1. ACCOUNT. *Equitable relief. Sufficiency of bills.*

Where complainant made advances to loggers, who were engaged in cutting logs from their own lands and that of others and selling same to defendants to pay advances of money made by complainants, and complainants kept the account consisting of the debit of advances and the credit of payments, such a transaction was neither a dealing between traders or such a mutual and complicated accounting as would come under the jurisdiction of a court of equity to require an accounting between the parties.

2. APPEAL AND ERROR. *Reversal. Instituting suit in wrong court.*

Where a chancellor assumes jurisdiction of a law suit the supreme court will not reverse his decree for the reason that the case should have been instituted in the law courts unless it be shown that it was otherwise wrong.

3. LIMITATION OF ACTIONS. *Open account between traders.*

A suit upon a mutual and open current account, where both parties are merchants or traders is controlled by section 3100, Code 1906, providing that "the cause of action shall be deemed to have accrued at the time of the true date of the last item proven in such account and such account is barred after three years from the date of the last item."

APPEAL from the chancery court of Greene county.
HON. W. M. DENNY, Chancellor.

Bill by L. N. Dantzler Lumber Company against
W. W. Walley & Son. From a decree overruling a
demurrer to the bill, defendant appeals.

The facts are fully stated in the opinion of the court.

*E. W. Breland* and *W. C. Churchwell,* for appellants.

We are not unmindful of the rule prevaling in this
court with reference to reversing the chancellor upon
his finding of fact, nor are we unmindful of the pro-
visions of section 147 of the constitution of the state
of Mississippi, but this court has ample authority, in
our judgment, to reverse this cause upon the law of
the case. If the sole question presented for the con-
sideration of this court, was the want of jurisdiction of
the lower court, then section 147 of our constitution
might be invoked but the statute of the state, to wit
section 3100 of the Code of 1906, must control in this
instance and unless the account sued on comes within
the saving provisions of this section, appellee's con-
tention falls to the ground. We contend that the ac-
count in question cannot be brought within the provi-
sions of this section at all; that is to say, that it is
perfectly apparent by reference to the account itself
exhibited, and the allegations of the bill of complaint,
that the account in this case is not a mutual and open
and current account, where both parties are merchants
and traders, and we confidently contend that this court
after comparing this account with the statute cited
above, will hold that the account in question is not such
as was contemplated by the statute, but should the
courts hold that the account in question comes within
the provisions of section 3100 of the Code of 1906, the
account, would nevertheless, be barred by the statute
of limitations of three years of our state and the
same could not be saved by the provisions of said sec-

tion 3100. Said section provides, among other things, that the cause of action shall be deemed to have accrued at the time of the true date of the last item proved in such account. Will the court kindly turn to the account exhibited in this cause, and observe the date of the last item proved therein. The last item proved is this: August 5, 1910 to check three hundred and fifty-one dollars and fifty-three cents. Suit was filed upon said account September 3, 1915, more than five years after the last item proved in the account. Granting for argument's sake, that the account up to this date, August 5, 1910, had been mutual and reciprocal between the parties, such as was contemplated by section 3100 of the Code, then after that date, could the appellee prevent the statute running against its account by occasionally giving appellants a small credit on the account for the six years and that only, as it appears, was done in this case? If that were true and if that be the law, such an account might be kept alive for evermore by occasionally entering a credit in favor of the party against whom it was charged. But our supreme court has held on this matter and the the matter is settled, and the court's attention is respectfully called to the case of *Abbey* v. *Gwens,* 57 Miss. 811. In this case the court dealing with the same identical state of facts said among other things:

"It must be shown that upon both sides of the account there are items of indebtedness which accrued within the period of limitation, and if the dealings are on one side only within that period, the statute does not apply. So long as the defendants continued to make charges, so long they admitted an open account; but when they ceased to make charges, the account ceased to be a mutual one. Inasmuch, therefore, as there were not mutual items, that is to say, items on on both sides, within three years of the institution of this suit, it follows that there were not mutual and open accounts current between the parties, and that the

plaintiff was entitled to judgment only for those items of account which accrued within said period.''

But the account was never mutual, was never an account between merchants or traders according to the usual and customary definition and application of the terms, but is simply a case according to the allegations of the bill, and which by way of demurrer we confess to be true, in which the appellants procured a loan or advancement of money of and from appellee with the understanding that they were to repay it whenever they could thereafter, in saw logs and timber; the fact that the refund or payment was to be made in logs and not in cash does not change the principle of the character of the transaction. If this constitutes a mutual account where the parties are merchants and traders so as to bring it within the statute, then the farmer that gets apples from his merchant and pays the account with chickens and eggs or other produce from his farm is a merchant or a trader and the account is mutual and comes within the statute.

Anderson's Law Dictionary at page 16, defines a mutual account thus: ''Those having original charges by persons against each other; accounts kept between merchants.'' And on page 17 of the same book: ''A mutual account is one based on a course of dealing, wherein each party has given credit to the other on the faith of indebtedness to him; if the items on one side are mere payments on the indebtedness to the other, then the account is not mutual. See also Words and Phrases, volume 5, page 4646. What evidence of complication is shown by the allegations of the bill and the simple account presented in this cause? What right to discovery has the appellee if the allegations of the bill of complaint are taken as true? The appellee alleges in its bill that all advancements made to appellant were done by check, sight drafts, etc., and that the original thereof, with one or two exceptions, are in the possession of the appellee. What assistance, there-

fore, does it expect of a court of equity in arriving at what, if anything, appellant is due it on account for in the same breath the bill alleges that appellant has been given proper credits for all logs delivered.

The court's attention is called to the case of *Barnard & Co.* v. *Sykes,* 72 Miss. 297. Let the court please notice that the purpose sought in this case through a court of chancery was twofold; first to recover on a bond of an employee and for an accounting of an account alleged to be mutual and complicated as provided for in section 161 of the constitution of Mississippi, and for discovery. The court in disposing of the matter said among other things: ''The account sued on is not a mutual account, one including mutual dealings between the parties, nor is it complicated as we think.'' Undoubtedly the case made in the *Barnard case, supra,* approached a great deal more nearly to a mutual and complicated case than the instant case but the same did not measure up to the requirement of the constitution according to the holding of this court.

The courts attention is especially called to paragraph 3, at the bottom of page 3 of the record, wherein it is alleged in the bill of complaint: ''And upon receipt of such logs by complainant that the complainant would cause the same to be measured, etc., and would credit the account of said defendants with the logs so received by it at the prevailing market price.'' If this allegation be true, and the demurrer confesses it to be true, then the logs delivered by Walley & Son were by the express terms of the agreement to be credited as a payment on the account and they therefore never at any time had any demand against the appellee and could have never maintained a suit for the value of any particular lot of logs so delivered and credited on the account. See *Abbey* v. *Hill et al.,* 64 Miss. 340; also *Abbey* v. *Owens,* 57 Miss. 811.

The account in question seems to us to be nothing more than just an ordinary plain every day matter

consisting of debits and credits, such as are being
adjudicated in the courts of law of the state, and the
proper forum for the same, except the entire account is
manifestly barred by the statute of limitation, which
fact having been called to the attention of the appellee
by correspondence between counsel, caused it in its last
extremity, to abandon its cause, properly brought in
the circuit court, and institute the same proceeding in
a court of chancery, but with all due respect to the
learned chancellor and his finding in the matter; upon
what it was based we have no idea but that he was
nevertheless manifestly wrong and erroneous and
contrary to the law and the case should be, in our
judgment, reversed.

*White & Ford,* for appellee.

We respectfully submit that this is a case entitled to
equity cognizance. We have been unable to find any
late holding on the question, but respectfully ask that
the court carefully consider the bill in the case, and that
after such consideration we are confident that there
will remain no doubt but what the demurrer should be
overruled; the bill is perfectly good, we submit, against
the demurrer as drawn, and we submit further it would
be good against any demurrer aptly drawn. In our
opinion the case presents no difficulty whatever and
the ruling of the lower court is not open to argument,
or question.

"Mutual and complicated accounts. Courts of equity
have for a long time exercised general jurisdiction in
cases of mutual account founded in privity, upon the
ground of the inadequacy of the remedy afforded by the
common law, and this may be said to be the established
rule even where the account consists of items of a pure-
ly legal character. *A fortiori,* though the accounts may
not be strictly mutual, where they have become so com-
plicated as to embarass the remedy at law, equity has

jurisdiction. This rule applied where the account is made up of many items for and against each party, or the items are numerous and extend over a long period of time." 1 Cyc., Law & Procedure, 422; *Watt* v. *Conger,* 13 S. & M. 412, and cases from various leading courts.

"Equity has concurrent jurisdiction with courts of law, in reference to numerous and complicated matters of account. The fact that there may be a remedy at law less convenient and less subservient to the ends of justice, does not deprive the court of chancery of its right to interpose. In matters of account extending over a variety of transactions, the remedy in equity is deemed more ample and complete, and tends to prevent a multiplicity of suits. 1 Story Eq., 439; *Watt* v. *Conger,* 13 S. & M. 421.

"Although there may be a remedy at law in matters of account, yet, if the relief be doubtful or inadequate, equity will entertain the bill, in order to more effectually give relief generally." *Ludlow* v. *Simon,* 2 Cains Cases 1, 2 An. Dec. 291.

The above case is recognized as one of the leading authorities on equity cognizance of accounts. Story in his work of Equity Jurisprudence cites the case eleven times. The judges each rendered an opinion on the case and we call the court's attention to the opinions of Judge THOMAS and KENT. It has been adopted in Mississippi on another proposition involved in *Bank* v. *Williams,* 46 Miss. 618.

It is said of the case in *United States* v. *Balner,* 21 Wall. 657: "There is no more learned and elaborate case on the subject."

Equity takes jurisdiction even in cases where the accounts are all on one side upon the theory that it is the more convenient court. *Blodgett* v. *Foster,* 68 Am. St. Rep. (Mich.) 504.

In the Blodgett case, which was a controversy over a lumber contract, the authorities are reviewed and a

case from the United States circuit court of appeals cited.

This court is not concerned with the difficulties, if any, which may befall the complainant when he comes to make his proof, but the only thing before the court is the bill and the demurrer which admits all allegations well pleaded, among those characterized as prominent by appellant, which he attacks. If he is dissatisfied with the truth of these allegations, he should have denied them.

Counsel admit that when a court of chancery takes jurisdiction for one purpose it will take it for all and do complete justice between the parties. Under recent well considered cases of this court, there is no question of the truth of this proposition.

Therefore when we ask for discovery and allege the necessity of the production of books and papers, this alone under the rule that when the court takes jurisdiction for one purpose it will accept it, would render the bill proof against demurrer, regardless of the fact that we show a mutual, complicated account between traders extending over a long period of time.

But we ask, why is the appellant so anxious to escape from a court of equity, where nothing but justice between the parties would be done. He should welcome a decision in such a court. It certainly cannot be that he intends to interpose any defense he could not interpose in a court of equity when as shown by exhibit "B" the appellants are honest citizens and if it can be shown they are indebted to appellee, in any amount they will be glad to pay it.

We respectfully submit that the legal proposition involved, is too well settled by this court and other courts to admit of argument and that the case should be affirmed.

COOK, P. J., delivered the opinion of the court.

The bill of complaint in this case was filed by the Dantzler Lumber Company against W. W. Walley & Son, the appellants, on the 3d day of September, 1913, and prays for an accounting and for judgment against the appellee for the amount to be found due. Briefly summarized, the bill alleges that prior to January 26, 1905, and since that date, the complainants and defendants were traders; that is, complainant during all of said period was engaged in the business of buying sawlogs and manufacturing same into lumber, and disposing of same in the market of the world. The bill of complaint alleges that defendants were during said period also traders; that is, they were cutting logs from their own lands and the lands of others and hauling them to the Pascagoula River and floating them to Moss Point, the domicile of complainants, and there selling them to complainants. The bill alleges, further, that the defendants applied to complainants for advances of money, which advancements were made by checks and by drafts drawn by complainants on banks payable to defendants and collected by them. An itemized statement is filed as an exhibit to the bill showing the dates and amounts of advancements and the dates and amounts of credit given for the market value of deliveries of logs made by defendants. The bill also alleges that, when logs were delivered to complainants, they scaled them and credited defendants with the prevailing price.

An inspection of the exhibits discloses an ordinary open account showing the date and amount of debits and the date and amount of credits. But it is alleged that complainants have learned that defendants were disputing the correctness of the account and, because of the lapse of time, the system of business, and the loss of certain vouchers, the case involves mutual and complicated accounting.

114 Miss.—39

Taking the simple statement of facts, and eliminating the deductions, it seems to us that neither a dealing between traders, or mutual and complicated accounting, is made out by the bill. The complainant made advances to loggers, who were engaged in cutting logs from their own lands and that of others and selling same to the defendants to pay advances of money made by complainants. Complainants kept the books—a very simple job, consisting of the debit of advancements and the credit of payments.

However, it may be said that the chancellor assumed jurisdiction of a lawsuit, and, having done so, this court will not reverse his decree, unless it be shown that it was otherwise wrong. If the chancellor reached the right conclusion, we should not reverse for the reason that the case made out by the bill should have been instituted in the law court.

This action is based upon an alleged balance due upon a mutual and open current account, where both parties are merchants or traders, and is controlled by section 3100, Code of 1906, which section provides that:

"The cause of action shall be deemed to have accrued at the time of the true date of the last item proved in such account."

The demurrer involved the three years' statute of limitation, and the last item claimed by the account is dated more than three years before the filing of this suit.

We think the chancellor erred in overruling the demurrer, and his decree is therefore reversed, and the bill dismissed.

*Reversed and dismissed.*

ON MOTION TO CORRECT DECREE.

STEVENS, J. The opinion heretofore delivered in this cause holds that the chancellor erred in overruling the demurrer to the bill, and that his decree should be

reversed, and the bill dismissed. Appellee presents a motion to correct the decree entered by this court dismissing the bill, and prays that the cause may be remanded, with leave to amend the bill generally. The motion is sustained, the cause remanded, with leave granted appellee to amend its bill generally within thirty days after receipt of mandate by the clerk of the court below.